SEGHERS, *ATTORNEY FOR ABSENT HEIRS* vs. *ANTHEMAN, EX. OF C. ANDRE, F. W. C.*

APPEAL from the court of probates of the parish and city of New-Orleans.

PORTER, J. delivered the opinion of the court. The first question to be decided in this case, is, whether the attorney appointed to represent the absent heirs can prosecute this appeal. It is objected that his power has been revoked by the court of probates.

The propriety of this revocation is now before us in another cause, and we are of opinion, cannot be examined in this. Until a

An affirmative statute containing provisions different from, but not contrary to a former one, does not repeal it.
Any judgment which produces grievance irreparable, authorises an appeal; and a decree of court admitting a will to probate, is one of that kind.
If the proof of a will being read over to the testator in the presence of wit-

East'n District.
*March,* 1823.

SEGHERS, AT-
TORNEY FOR
ABSENT HEIRS
*vs.*
ANTHEMAN
EX. OF C. AN-
DRE, F. W. C

nesses is furnish-
ed by the testa-
ment itself, it is
immaterial  in
what words that
proof is furnish-
ed.

When the no-
tary states that
he wrote the will
" without turn-
ing  aside  to
other acts" it is
not necessary to
add,  " without
interruption."

decision be given confirming the judgment of the court of the first instance, the attorney stands here with all the powers originally conferred on him.

The main question presented for decision is, the validity of an instrument admitted to probate as the last will and testament of Cathe- rine André, a f. w. c.  A previous one, how- ever, has been raised, which it becomes ne- cessary to dispose of before the merits are gone into.  It is said that this judgment is not such a one as can be appealed from, and in support of this position, we have been referred to the act of the state legislature, 1817, 188.

The act relied on, treats almost exclusive- ly, of vacant successions, and without in- quiring whether the terms of the section that enumerates the several decrees from which an appeal may be taken, are sufficiently com- prehensive to embrace cases where the estate is *not vacant*, (though the contrary may well be doubted,) we are of opinion, that there is nothing in the act which takes away the ju- risdiction of the court in the instance before us.  The terms used are in the affirmative, and at the end of the act there is a clause pro- viding that all acts or parts of acts, which are

contrary to that act should be repealed. It is not, in any respect, contrary to any part of that act, to allow an appeal from the judgment admitting a will to probate, for there is nothing in the statute which negatives the right, or which says, no such appeal shall be taken.

East'n District.
*March*, 1823.

SEGHERS, AT-
TORNEY FOR
ABSENT HEIRS
*vs.*
ANTHEMAN,
EX. OF C. AN-
DRE, F. W. C.

The rule is perfectly well established, in this court, that any judgment which produces a grievance irreparable, will justify an appeal. The decree of a court, admitting to probate, and ordering the execution of a will, which is invalid or obtained by circumvention, as is alleged to have been the case here, we think may produce injury of that kind, For the executor is not obliged to give security, and the whole property of the estate may be wasted by passing into unfaithful hands.

At the beginning of the will the notary declares, that he went to the house of the testatrix who required him to receive her will, " *qu'elle nous a de suite dicté, et nous l'avons écrit tel qu'elle nous l'a dicté en présence des témoins ci-après nommés et sans divertir a d'autres actes.*" " which she at one time dictated, and we wrote it, as it was dictated in the presence of the witnesses hereafter named, and without turning aside to other acts."

East'n District.
*March,* 1823.

SEGHERS, AT-
TORNEY    FOR
ABSENT HEIRS
*vs.*
ANTHEMAN,
EX. OF C. AN-
DRE, F. W. C.

And at the close of the testament, the fol-
lowing sentence occurs. " *C'est ainsi que ce
testament a été fait en présence des Sieurs, Benoit
Pignon, Louis Desporte et Guillaume Bertel, tous
trois témoins domiciliés en cette paroisse, et lecture
faite de ce que dessus, la testatrice en présence des
témoins, nous a déclaré qu'il contenait sa volonté et
qu'elle y persistait et persévérait.*"

" And it is thus that this testament was
made in presence of ——————— witnesses,
all three domiciliated in the parish, and the
reading being gone through, the testatrix, in
presence of the witnesses, declared to us that
it contained her last will, and that she per-
sisted and persevered in it."

This will is attacked on three grounds.

1. Because, it does not appear to have been
read over to the testatrix in presence of the
witnesses.

2. Because, all the formalities required by
law were not fulfilled at one time, without
interruption, and turned aside to other acts.

3. Because, it does not carry, on the face of
it, evidence that the formalities required for
its validity has been fulfilled.

I. The first objection is the most important.
In support of it, decisions in the French

courts have been relied on, and as the tex-
tual provisions of their law on this subject,
are *verbatim* ours: we have been much aided
in our investigations by the elaborate exami-
nation which the question, raised in this case,
has received from the jurisconsults, and tribu-
nals of France.

But the cases to which the counsel, in-
terested in invalidating the will, has drawn
our attention, are those which were decided
immediately after the adoption of the *Napo-
leon Code*. And on this subject, a complete
change has taken place in the jurisprudence
of France. At first, a great degree of seve-
rity was displayed by the court of cassation
in acting on this article of their code, which
corresponds with ours. Nothing would be
received as an equivalent for the express
terms of the law. Expressions, which clearly
conveyed the same idea, were held to be in-
sufficient. It was decided, that if it was pos-
sible to deduce from the act that the will
*might have been* read twice, once to the testator,
and once to the witnesses, that it was suffi-
cient to exclude the idea that it was read to
the testator in the presence of the witnesses;
and lastly, it became a maxim, that unless the

East'n District.
*March*, 1823.

SEGHERS, AT-
TORNEY FOR
ABSENT HEIRS
*vs.*
ANTHEMAN,
EX. OF C. AN-
DRE, F. W. C.

East'n District.
March, 1823.

SEGHERS, AT-
TORNEY FOR
ABSENT HEIRS
vs.
ANTHEMAN,
EX. OF C. AN-
DRE, F. W C.

testament itself proved by the terms used in it, the absolute impossibility that there was an omission of the formalities required by the *Code*, it must be annulled.—*Grenier, traité des donations* 425, n. 239. *Merlin Rep. de jurisp. verbo testament,* 639, 640, 641, 642, 643; *Delvincourt, tom.* 1, 781; *Sirey* 11, 259, 1810, *p.* 232, *an.* 1814, 155; *Toullier, droit civil Français* 5, n. 428.

But the great strictness of these decisions having produced such inconvenience that persons were generally advised to join an olographic will to the public one, least some of the formalities prescribed for the latter should be omitted; and an attempt being made to carry the doctrine still further by seeking to annul a testament where the very words of the law had been used, on the ground that by the punctuation it did not necessarily result, that the reading had been to the testator in the presence of the witnesses, the court of cassation gave an opinion shaking in a great measure the principles which seemed to have at first governed them.—*Recueil de Denevers, an* 1814, 25 & 26. *Toullier Droit Civil,* 5, 408, n. 430. They have, since that time, marked still more clearly the change which has taken place in their opinions; and after a

series of decisions, not necessary to be stated in detail, they have ultimately settled the doctrine which good sense recognizes, and law supports, that in order to annul a nuncupative testament by public act, it is not sufficient to show that the clause in which mention is made of the reading, is equivocal; that by the terms used in it, it is uncertain whether it was twice read over, once to the testator, and once to the witnesses; or that the reading was to the testator in presence of the witnesses. They hold, that such a case is one for the application of that article of their *Code*, by which it is provided that when a clause is susceptible of two meanings, it shall be understood in that in which it will have some effect, rather than that in which it will not produce any.—*Toullier, vol.* 5, *p.* 415, *n.* 430. *Sirey, vol.* 19, 31, *ibid, vol.* 18, 11, 13.

One of the cases in which these principles were applied, contained the following clause.

"*Fait et passé en présence de...........témoins requis et appelés qui ont avec nous notaire signé la minute des presentes, et a l'égard dudit testateur il a déclaré ne savoir écrire ni signer, de ce interpelé; après lecture faite audit testateur; qui a dit bien entendre et comprendre.*"

East'n District.
*March*, 1823.

SEGHERS, ATTORNEY FOR ABSENT HEIRS
*vs.*
ANTHEMAN, EX. OF C. ANDRE, F. W. C.

East'n District.
March, 1823.

SEGHERS, AT-
TORNEY  FOR
ABSENT HEIRS
     vs.
ANTHEMAN,
EX. OF C. AN-
DRE, F. W. C.

" Done and passed in presence of witnesses required and called, who with me, the notary, signed the minute of the present act, and as it respects the said testator, he declared that he knew not how to write or sign his name, when called on to that effect, after being read to the testator who said he heard and understood."

There is nothing here which makes express mention that the will was read over to the testator in the presence of witnesses. But the court of cassation held it valid because it resulted from the whole testament that it had been dictated, written, and understood by the testator in their presence.—*Toullier*, 5, 415, *n.* 430.

So the instrument now under consideration clearly and sufficiently conveys the idea, that the will has been dictated, written, understood and approved by the testatrix, in the presence of the witnesses. Indeed it is so expressly stated.

There is, however, one circumstance belonging to this case, not to be found in any other that we have met with, decided in conformity with the above principle. It is not stated here, that the will was read over to the testa-

trix, but it is declared, that after the reading, she approved it, in presence of witnesses. It has occurred to us, as worthy of consideration, whether it necessarily resulted from the expressions, that the will was read *to her*, and we think that it does. To give them any other construction, would be to render the whole clause absurd; for, if it was not read to her, why the statement that the reading preceded the approbation given.

On the whole, we think the objection not tenable, and that it is sufficiently established, the instrument admitted to probate, as the last will and testament of the deceased, was made in due form of law. It is true, this court has declared, that the formalities required in the making of wills are matters of strict law, and we are still of the same opinion. But the question recurs, is there any thing in the provisions on this subject, which makes it indispensable that the very words used in the *Code* should be repeated in the will: that like words of art in an indictment, no other words however synonymous they may seem, are capable of conveying the same idea. We see nothing which calls for such severity of construction, and we conclude, that if the proof

East'n District.
*March*, 1823.

SEGHERS, AT-
TORNEY FOR
ABSENT HEIRS
*vs.*
ANTHEMAN,
EX. OF C. AN-
DRE, F. W. C.

East'n District.
*March, 1823.*

SEGHERS, AT-
TORNEY FOR
ABSENT HEIRS
*vs.*
ANTHEMAN
EX. OF C. AN-
DRE, F. W. C.

of the will, being read over to the testator in the presence of the witnesses, is furnished by the testament itself, it is immaterial in what words that proof is furnished. The principles laid down in the case of *Bouthemy* vs. *Dreux*, a few days since, are applicable to this. See also, *Civil Code*, 270, *art. 57.*

The second objection is, that the will does not import that it was executed at one time, without interruption, and turning aside to other acts. This objection did not receive much developement in the argument; but as the notary has expressed that the testatrix dictated the will at one time, that he wrote it as she dictated it, and without turning aside to any other act, we presume that the nullity relied on is, that it is not also stated to have been done " without interruption." It is difficult to understand, why this expression came to be introduced into our law; for the other, *sans divertir à d'autres actes;* " without turning aside to other acts," conveys exactly the same idea. The phrase " *tout ce que dessus sera fait de suite, et sans divertir à d'autres actes*" is taken from the French ordinance of 1735, and was used in that statute by the chancellor D'Agusseau, to express clearly, the unity of

East'n District.
March, 1823.

SEGHERS, AT-
TORNEY FOR
ABSENT HEIRS
vs.
ANTHEMAN,
EX. OF C. AN-
DRE, F. W. &.

action and of time, which was required by the *Roman law* in the making of a testament. The framers of the *Napoleon Code*, have adopted it in respect to the mystic testament only. We have applied it to that instrument and the nuncupative will, by public act. In the provision contained in our *Code*, respecting the closed will, we have followed *verbatim* the language of the ordinance and the French *Code*. In that which points out the mode to be pursued in the making a nuncupative will, the words " *sans interruption.*" are added, and it appears to us for no purpose. The expression " *sans divertir à d'autres actes*" does not mean alone, that the notary shall not commence any other instrument of writing; but it also conveys the idea, that nothing else shall be done, until the will is completed. So the jurists and tribunals of the country, from which we took the law, understand it; and so also, was it understood by our law makers: for, in the very page of the *Code* next succeeding that which contains the provision, that the nuncupative will must be written " *sans interruption et sans divertir à d'autres actes*" we find the expression " *sans divertir à d'autres actes,*" is used as the corresponding term to the English

East'n District.
*March*, 1823.

SEGHERS, AT-
TORNEY    FOR
ABSENT HEIRS
*vs.*
ANTHEMAN,
EX. OF C. AN-
DRE, F. W. C.

words, "without interruption and without turning aside to other acts." *Toullier droit civil Français, vol. 5, 464, n. 485; Grenier traite des donations, 432, 433, n. 241; Dig. liv. 28, tit. 1, l. 21, n. 3; Code Napoleon, n. 972, 979; Civil Code, 228, art. 92, 230, art. 99, Merlin Rep. de jurisprudence verbo testament, vol. 13, 622, art. 1.*

The last objection, has been answered by the observations made on the two first; and we do therefore, order, adjudge and decree, that the judgment of the court of probates be affirmed with costs.

*Seghers* for the plaintiff, *Denis* for the defendant.

———

SEGHERS, ATTORNEY FOR ABSENT HEIRS vs. AN-
THEMAN, EX. OF C. ANDRE, F. W. C.